UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIE SANDERS : | CIVIL ACTION NO. |
| : | 3:02 cv 498(AWT) |
| Plaintiff, : | |
| : | |
| VS. : | |
| : | |
| FIRELINE, INC. : | |
| : | |
| Defendant. : | NOVEMBER 30, 2006 |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY**

Pursuant to D. Conn. L. Civ. R. 7(d), the defendant, Fireline, Inc. ("Defendant" or "Fireline"), through its undersigned counsel, hereby files this Reply to *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Preclude Expert Testimony* dated November 15, 2006 ("*Opposition*").

The Opposition only reinforces why the Plaintiff, Willie Sanders ("Plaintiff" or "Sanders") should be precluded from introducing the testimony of Michael Shanok ("Shanok") at trial: Shanok is not a qualified expert, and his opinion is itself inadequate in its methodology and analytical rigor.

I. **Shanok is Not Qualified to Render Expert Testimony Regarding the Design of the Pour Cup.**

The Opposition restates the five hypothesized defects of manufacture or design that Shanok concludes caused the accident alleged in the Complaint. Opposition at 5. All five hypotheses depend on a conclusion that either the material composition or the shape of the pour cup rendered it inadequate to withstand the "temperatures and forces" present during the pouring

process. Id. An expert giving testimony concerning such hypotheses, therefore, needs to have some experience with the manufacture or design of fused silica products in which to ground his or her testimony.

Shanok does not posses such experience. Rather, Plaintiff insists that Shanok's competency to offer an opinion on the alleged failure of the pour cup is established by a variety of different background experiences. Some of those experiences are overstated by Plaintiff, and none of them approach the type of experience necessary to make Shanok an expert in the manufacture or design of fused silica products.

Plaintiff points to Shanok's experience "work[ing] with furnaces that were lined with ceramics and various ceramic parts and pieces" (Opposition at 11). Later he repeats that Shanok has experience with "fused silica in a foundry setting" (Opposition at 14), and cites deposition testimony stating that Shanok has "worked with fused silica." Id. However, that testimony is immediately followed by the following exchange:

> Q: What was your involvement with fused silica?
> A: ... simply in the maintenance of the equipment that utilized fused silica materials.
> Q: Nothing more than that?
> A: That's correct.
> Q: So you've never done any designs of products incorporating fused silica; correct?
> A: That's correct.

See Deposition Transcript Part I of Michael Shanok ("Dep. Tr. of Shanok I"), dated August 11, 2003, at 72-3, excerpts of which are attached as Exhibit A. Shanok's claim to have "worked with" fused silica, then, is dramatically overstated. Shanok has never been involved in the design or manufacture of products composed of fused silica, and he is not qualified to render an expert opinion concerning how different "temperatures and forces" might affect it.

Plaintiff next claims that Shanok has been "involved in designing specifications for fused silica products." Opposition at 14. This claim is directly contradicted by Shanok's own deposition testimony concerning those specifications:

> Q: Did you design the specifications?
> A: I can't say that I designed the specifications.

Dep. Tr. of Shanok II at 48. Shanok goes on during the deposition to explain that his experience with the specifications in question was limited to reviewing specifications of furnace liners already designed by the manufacturers. Id. at 49-51.

Likewise, Plaintiff's claim that Shanok has "worked at a plant where silica was turned into fused silica" (Opposition at 14) is misleading. Shanok has testified that while he worked at that plant, he never had any hands-on experience with fusing the silica:

> Q: Did you ever have hands-on experience of taking the silica and fusing it?
> A: No. That got done by other people.

Dep. Tr. of Shanok II at 52. Shanok also testified that he never designed a fused silica product, and he never did any testing of fused silica products. Id. In the absence of that sort of experience, Shanok's proximity to the fusing process does not make him an expert.

Plaintiff also claims that "significantly," Shanok has conducted "failure analysis" on fused silica products. Opposition at 14. However by Shanok's own admission, that "analysis" – performed two or three times between 1970 and 1972 – involved absolutely no testing. Dep. Tr. of Shanok II at 54. Plaintiff also tries to boost Shanok's credentials by stating that Shanok has served as an expert witness in prior litigations. Opposition at 7. However, not only has Shanok

been precluded as an expert on at least one prior occasion,[1] but Plaintiff has not shown that Shanok has ever been admitted as an expert in the field of the design and manufacture of fused silica products.

In sum, Plaintiff's attempt to inflate Shanok's experience with fused silica is in vain. Shanok's experience does not come close to qualifying him as an expert in the design or manufacture of fused silica products. Shanok is completely unqualified to testify as to whether the material composition or the shape of the pour cup rendered it inadequate to withstand the "temperatures and forces" present during the pouring process. He is not qualified to offer expert testimony regarding whether the pour cup in this case was defective.

## II. Shanok's Opinion is Itself Inadequate in its Methodology and Analytical Rigor.

Plaintiff admits that the standards for admissibility of expert testimony under Rule 702 and the Daubert analysis include "reliable ... methods" and "intellectual rigor" (Opposition at 8). While Plaintiff insists that Shanok's opinion is based on "widely accepted engineering principles and sound scientific methodology" (Opposition at 28), and while Plaintiff claims that Shanok will present his testimony with a "reasonable degree of scientific certainty" (Opposition at 4), Plaintiff still cannot point to any sound scientific basis for Shanok's opinion that the pour cup was not adequately designed or manufactured to withstand the "temperatures and forces" present during the pouring process.

Indeed, Plaintiff's attempt to provide some insight into Shanok's methodology only adds to the mystery surrounding it. Plaintiff claims that Shanok's methodology is based on foundry

---

[1] Debartolo v. Daimler Chrysler Corporation, 2005 WL 3665602 (Conn. Super.), **cited by Plaintiff** in his *Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.*

practices, OSHA regulations, and "information that has been verified by the operators, first line supervisors and managers of the foundry" (Opposition at 2 and 16) – in other words, the testimony of persons who are not experts. Plaintiff fails to explain how any of this information supports a conclusion that a particular shape or chemical composition of a pour cup renders it inadequate to withstand the "temperatures and forces" present during the pouring process, a conclusion that can only be supported by testing and analysis of the cup itself.

Plaintiff does not deny that Shanok's report of his opinion is not based on a review of the engineering drawings or the chemical composition of the pour cup. Instead, Plaintiff merely complains that Defendant has not provided the design specifications of the pour cup to Plaintiff. Opposition at 15. However, this complaint is puzzling, because the pour cups were designed by Ansonia Copper & Brass, Plaintiff's employer, not by Fireline. Plaintiff has always had access to the design specifications of the pour cup and could have provided them to Shanock at any time. In any event, Plaintiff follows his complaint with the statement that the design specifications of the pour cups could "not affect" Shanok's opinion that the pour cup was "inherent[ly] defective" (Id.). In other words, Plaintiff claims that knowing the exact chemical composition and precise shape of the cup could not affect Shanok's opinion that the composition and shape of the cup were not adequate to withstand the "temperatures and forces" present during the pouring process. This admission merely serves to further illustrate the complete absence of any scientific or technical basis for Shanok's opinion.

Plaintiff also attempts to elevate the credibility of Shanok by discrediting the OSHA investigation. Incredibly, Shanok complains that the OSHA investigators failed to test their

hypothesis!  In actuality, as described in the June 15, 2006 Memorandum of Law filed in support of this Motion, OSHA's testing of their hypothesis was extensive.  As described there (at p. 7):

> The two [copper] billets were cut open in several predetermined locations, compared with one another, measured, acid-etched and polished.  OSHA examined the billets' grain, the centering and tightness of the pour, and the composition of the alloy, as well as the stress fractures in the damaged billet.

In fact, OSHA's testing is a good example of the sort of rigorous, scientifically-grounded methodology that could be employed by a witness seeking to offer expert testimony into how the shape or chemical composition of a given physical object might affect, or be affected by, a given set of circumstances.

WHEREFORE, for all of the above reasons, as well as those set out in the June 15, 2006 Memorandum of Law filed in support of this Motion, Defendant respectfully requests that its motion to preclude the expert testimony of Michael Shanok be granted.

THE DEFENDANT
FIRELINE, INC.

By_____
Mark B. Seiger, Esq.
Fed. Bar No. ct 05580
Charles F. Gfeller, Esq.
Fed. Bar No. ct 18119
EDWARDS ANGELL PALMER
& DODGE, LLP
90 State House Square
Hartford, Connecticut 06103
Phone: (860) 525-5065
Fax: (860) 527-4198

HFD_171543_1/CGFELLER

## CERTIFICATION

This is to certify that on the 30th day of November, 2006, a copy of the foregoing has been mailed via certified mail, postage prepaid, to the following:

Robert J. Sweeney, Esq.
Early, Ludwick & Sweeney
One Century Tower
265 Church Street, 11th Floor
PO Box 1866
New Haven, CT 06508

Timothy D. Ward, Esq.
McGann, Bartlett & Brown
281 Hartford Turnpike # 401
Vernon, CT  06066

_____
Charles F. Gfeller